Case No. 15-1336 et al. International Longshore & Warehouse Union Petitioner v. National Labor Relations Board. Mr. Belano for the petitioner, Ms. Gandy for the respondent. Petitioner v. National Labor Relations Board. Good morning. Good morning, Your Honors. My name is Robert Greenmar. I'm counsel for the LWU Longshore Union. I've been an attorney for labor unions and employees all my life, and I find myself in the awkward position of arguing essentially an employer's position because of their decision to settle out the case without us. So here I am, and here goes. Fortunately, though, I think the law is very strong in our favor. I think that the favorable decision for us by the administrative law judge is exactly on point. If it's a single employer, if we take that, then doesn't that alter the case in the sense that if it's a single employer and the customer wants a lower price and the single employer, in effect, is deemed to have unilaterally lowered the wages and benefits of a group of employees by transferring them from one unit to another, why is that wrong? If it's a single employer, that's the key to the case, isn't it? It should have been, but for the U.S. Supreme Court's decision in South Prairie Construction, where the court rejected unions' arguments along with the line that you just said, Your Honor. The court said that even in a situation where you have a single employer entity, whether it's by historic or they just have established separate divisions controlled by the same central corporation. I'm sorry, what's the case you just referred to? The South Prairie Construction Supreme Court case. What it held is that even when you have single employer entities, when you have separate collective bargaining units, you cannot presume, as the unions argued, you cannot presume that what happens in one bargaining unit automatically applies to the other or to a non-union workforce. There's a little bit more here than just the single employer, right? There are findings by the board that the single employer and the ultimate consumer of the labor, which is, I don't know how you pronounce it, Maersk. Maersk. were all working together in order to effectuate arrangements that would enable the workers to be shifted from the high-cost union to the low-cost union and that this was all driven by concern over labor costs. If all of that is supported by substantial evidence, what is the legal principle under which you could win this appeal? The legal principle is that Maersk put out a bid, and the discussions that you referred to, Your Honor, have to do with discussions about their bid and about their needs. Maersk was familiar with both companies. Maersk had a commercial contract with PMMC, which was the machinists group. They had contracts with PMMC in Tacoma and in Oakland and with PCMC in Los Angeles for the ILWU. They were very familiar with the ways of the different workforces and the different bargaining units. Their position as a customer was, we like the arrangement for a lot of reasons, including labor costs, but also including efficiencies, much better for the ILWU PCMC unit. And that's the one that we want to have now for Oakland and Tacoma, just like we do in Los Angeles. Once they made that decision, then there was nothing more to be done. The board says there should have been further bargaining with the IAM unit, with the machinists. Well, that would have involved bargaining over what the counter response would be to the bid. It would have been bargaining about what the employer, as a single employer's commercial counter response would be concerning the bid. And it would have involved whether that would have been sufficient and acceptable for Maersk to accept or whether it would have engaged in further bargaining. This is assuming that Maersk was open to reconsidering the award that it gave. But why does Maersk control what the employer can do to its employees? Well, Maersk is in terms of unilateral change of the terms and conditions of employment. Maersk isn't in control of what the employer can do with its employees. Right. And so Maersk wants a lower price, as does anyone in that situation, but that doesn't give carte blanche to the employer to then unilaterally change the terms and benefits. It does not give carte blanche to the employer, but the situation here is one where it was impossible for PMMC to do, to provide under its bargaining unit with the machinists to provide what Maersk wanted. It was impossible because unlike PMMC and the Longshore Coastwise Bargaining Unit, there were no other workforces that were IM within the PMMC bargaining unit that they can interchange with. They couldn't pull from other locations in the port because there were none. Whereas with Longshore, there were all sorts of other locations that PCMC was able to pull from, and that provided for the lean staff model. The other impossibility was that there was no established hiring hall for PMMC and the IAM to utilize. If, as the board proposes here, the remedy would be well, or the proper legal course would have been, you have to go back and negotiate these things, that's essentially negotiating what the customer wants and then coming back and presenting some sort of counterproposal for further commercial bargaining concerning the customer's bid. The other answer to the question about can Maersk, as a customer, how can it dictate what the employment decisions are of a company like PMMC and PCMC? Well, Maersk wasn't directing who was actually going to be employed for PCMC. PCMC could have done a couple of other things. They could have had other workers, if they chose, that were already incumbent employees on their payroll and brought those workers in to perform the jobs here, to perform the new bid. They could have also hired from the outside. That's perfectly lawful. How does what you just said help your case? It helps the case because it establishes that there wasn't, that Maersk's decision about the bidding, signing the award, was not a decision about specifically determining employment relationships. That was still left up to, that part was still left up to the employer. And the employer chose to unilaterally, in effect, change, I'm speaking, I'm oversimplifying here, but basically to change the wages and benefits for a group of employees, in effect, instead of doing the things that you mentioned, which could have been done. If they had, if Maersk had, sorry, if PCMC, PMMC, if the employer had hired people from the outside or shifted other incumbent PCMC longshoremen to the jobs, that would have been perfectly proper. It would have provided for exactly what Maersk wants without Maersk dictating exactly who the people were to be hired. But what happened was the employer chose to, it also highlights the fact that there's two different things going on here. There's the termination of the bid to PMMC and then the layoff of those people and then what happens to those people. They don't necessarily come over to PCMC to be hired. PCMC chooses. The vast bulk of them did. That's right. The vast bulk of them did. And under a traditional successorship doctrine analysis that could have, maybe would have, triggered a bargaining obligation, but for reasons which I really don't understand, the general counsel withdrew that. That's out of the case. It's out of the case. So there isn't an obligation under successorship for the other piece, of the single employer to assume a bargaining obligation as a result of hiring all of the workers from PMMC. Okay. Why don't we hear from the Board and we'll give you a few minutes on rebuttal. Thank you, Your Honors. Good morning. Amy Ginn for the National Labor Relations Board. In this case, the company's purpose overall was to lower its labor costs and to satisfy its customer, and to do so, it moved employees to a different union contract, which was not the union that they chose for the representation. What the Board found was required in terms of bargaining was that as a single employer, the company had an obligation to bargain with the machinists over two specific things. One, the decision to lay off the employees for PMMC, and two, the terms and conditions of employment for these individuals as they became new hires at PCMC. So the Board did not find an obligation to bargain over the contents of a bid to a customer, but rather to bargain over what the terms and conditions of employment would be for these individuals who are continuing to do the same work in the same place for the same customer after this changeover. And for the same employer, basically. I'm sorry, Your Honor? And for the same employer. Yes, and for the same employer, which is, of course, what this case turns on, that this is a single employer with an obligation to its employees to bargain whatever entity of its corporate enterprise that those employees are working for. As the Board found, the company could have bargained over many issues that addressed Merck's concern over labor costs. That was overwhelmingly the concern in changing the contractor. The Board also found that Merck wanted a continuity of workforce as part of changing over. There were discussions that they wanted to have the same mechanics doing the work as before. With respect to whether the machinist could have provided all the things that were necessary to get the cost down to the point that the customer wanted, as this Court has found and as the Board found here, the futility of bargaining is not an excuse for not engaging in that bargaining. And it's simply unknown whether the machinist could have met those demands because they were never asked to do so. With respect to the next step, which is the argument that the machinist, once this occurred, that the unit was accreted into the overall coast-wide unit, the Board properly found, giving significant weight to the party's bargaining history, as the Board does in these situations, that the machinist unit survived the transfer work and was not merged into the larger longshore union unit. In that way, this case is very similar to this Court's decision in Dodge of Naperville, pardon me, upholding the Board's finding there that a failure to bargain over initial terms and conditions of employment, thus changing the employee's terms and conditions upon insertion into a larger unit, that could not justify withdrawal of recognition from the smaller unit. And that's very similar to the situation here. One last point with respect to the Board's remedy in this case. We'd just like to point out, as we did in our brief, that the union has not preserved that argument before this Court by not challenging the remedy to the Board at the time it was ordered. Okay. Anything else? Nothing else, unless you have any further questions. Okay. Thank you. Thank you. I'll give you a minute for rebuttal. Thank you, Your Honor. What the Board failed to do was to apply the governing standard of the test that's been established by this Court in road sprinklers and in Geiger construction cases. And the test is whether the change, when you have basically double-breasting-type competing bargaining units where work is shifted from one bargaining unit to the other in a single-employer situation, the test is whether the change, quote, was due to external economic circumstances or to a change in the employer's established practices with regard to the assignment of the work. Napperville, which counsel for the NLRB said is directly on point, specifically applies, as it had to, the established test that I just read. In that situation, Napperville found, as a matter of the facts, that all of the changes were instigated by the employer itself. Here it's undisputed that MERSK, the customer, instigated the changes here. Here it's undisputed that the facts show that it was an external force, specifically MERSK, that ended up creating the very changes that the Board claims are unlawful. The failure to apply the standard that is established in Rhodes-Sprinkler and Geiger and in Napperville is an error of law that requires that this Court vacate the decision and remand it back to the Board. Thank you very much. Thank you. The case is submitted.
judges: Henderson, Kavanaugh, Katsas